## W. P. GOSSARD, *et al.*, v. MARTIN VAUGHT, *et al.*

COUNTY-SEAT ELECTIONS; *Time of Holding.* An election for the relocation of a county-seat must be held within fifty days after the presentation of the petition therefor, or it is void.

*Error from Butler District Court.*

INJUNCTION, brought by *W. P. Gossard* and *L. B. Snow,* citizens, taxpayers and legal voters of the town of Eldorado, against *Vaught* and others as county commissioners of Butler county, to enjoin the defendants from canvassing the votes cast at and returned from the several election precincts of said

county at an election held on the 1st day of June 1872 "for the removal and relocation of the county-seat of said Butler county." The petition for the relocation of the county-seat was presented to the county board February 16th, 1872. A majority of the votes cast at the election were in favor of removal of the county-seat from Eldorado to Augusta. The county board were about to canvass the votes and declare the result when this suit was commenced. The district judge granted a temporary injunction on the 4th of June, which was afterward, on motion dissolved by said judge, June 18th; and from the order *dissolving* said injunction the plaintiffs appeal, and bring the case here by petition in error.

*H. T. Sumner*, and *Ruggles & Plumb*, for plaintiffs in error:

1. Can a legal election for the location of a county-seat under the provisions of ch. 26, Gen. Stat., be held more than fifty days after the presentation of the petition in pursuance of which the election is called and held? The board of county commissioners have no control over the changing of the county-seats except to order an election, fix the time, cause the proper notice to be given, and after the election meet and canvass the votes, and declare the result; and this power they derive solely from the acts of the legislature, and without it they had none whatever. Const. of Kas., art. 9, § 1; ch. 26, Gen. Stat., p. 297, §§ 5, 6; and this being the case, they were in the case at bar acting under a statutory power, and their whole proceedings in the matter were absolutely void unless all the provisions of that power were strictly complied with. 28 U. S. Dig., 490, §§ 10, 11, 12; Blackw. Tax Titles, 2d ed., p. 54; 1 Kas., 273; 2 Kas., 115.

2. Sec. 1 of said ch. 26, requiring the board to order an election on presentation of a petition of a majority of the legal electors of the county, is imperative — leaves no discretion in the board, and therefore their acts in the matter are purely ministerial. No person can appear and object; no adjudication is required; and therefore the legislature could not have contemplated their postponing any action on it for

deliberation and consideration, or for any other cause, but it became their duty immediately to examine the assessment rolls of the several township assessors and make the order for an election to be held "within fifty days- from the presentation of the petition," and cause the proper notice thereof to be given. (1 Kas., 273.)  The act fixing fifty days from the presentation of the petition is a complete statute of limitations, after which no election can be held.  If such is not the proper construction, the action of the legislature in fixing the time is wholly without apparent purpose.  The limitation of time to fifty days is not directory; and we claim that the case of *Jones v. The State*, 1 Kas., 273, is decisive of this case.

*McCollum, Garland,* and *Akin,* for defendants in error :

1.  In the absence of any allegation of fraud on the part of the board of commissioners, their failure to order the election within fifty days from the presentation of the petition, as provided in § 5, ch. 26, Gen. Stat., is merely an informality of these officers, in noticing and conducting the election, and cannot go to defeat the "real will of the people ;" (ch. 36, § 29.) It is not alleged that their failure to comply fully with the requirements of said § 5 in any way affected the result of the election.  Statutes directing the mode of proceeding of a public officer, as to time and manner, are directory merely, and not imperative.  Dwarris on Stat., 222, note; 10 Iowa, 212; 3 Mass., 232; 11 Wend., 604; 6 Hill, 646; 14 Barb., 261; 8 Vermont, 280; 12 Conn., 243.

2.  In ascertaining the difference between mandatory statutes and those merely directory, the rule has been laid down that "where certain acts required to be done are of the *essence* of the thing required to be done by the act, it is imperative ;" Smith's Com., 679.  The statute under which the county board acted does not come under this rule; the *"essence"* of that statute, having no regard to time.  The 5th section of the chapter was evidently inserted by the legislature to prevent the commissioners defeating the prayer of the petitioners, by neglecting or refusing to order the election for a great length of time.

The "essence of the thing required to be done" by the statute is the granting of an election; this is imperative; the time in which the election shall be held is not of the "essence of the thing required to be done" by the statute, and is, therefore, directory. The election having been ordered 106 days after the presentation of the petition would give the people of the county a better chance to get a knowledge of the time and purpose of the election, than if only 50 days had elapsed; and as the board ordered the election in the proper manner, and gave due notice of the time and purpose of the election, no possible wrong could have accrued to any one. None were deceived — none failed to get due notice. No fraud, no collusion is alleged on the part of any of the defendants, and we submit that the election should be held valid.

The opinion of the court was delivered by

BREWER, J.: But a single question is presented in this case. Is a county-seat election held by order of the county commissioners more than fifty days after the presentation of the petition therefor, a valid election? The law under which this election was held is ch. 26, of the Gen. Stat., p. 296. As preliminary to such an election a petition therefor must be presented to the county board. This must be signed by a certain proportion of the electors. Upon the filing of such petition it is made the duty of the county board to order an election. Sec. 5 of this act declares that "The election provided for in this act shall be held within fifty days after the presentation of the petition therefor; and the county commissioners shall cause thirty days' notice of any such election, to be given by publication," etc. In this case the petition was presented on the 16th day of February 1872, and the election ordered, and held on the 1st day of June — 106 days thereafter. Was it valid? The rule by which we must be guided in deciding this question has been already announced by this court in the case of *Jones v. The State, ex rel. Atherby*, 1 Kas., 273, where it was said that "unless a fair consideration of the

statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely." This rule was followed with approbation in the case of *Gilleland v. Schuyler*, 9 Kas., 569, decided at the last term. That it is within the power of the legislature to make almost any step in the proceeding an essential one, admits of no doubt. Except so far as restrained by constitutional limitations, the time, the place, and the manner of holding elections, are within its control. It has in the present instance exercised that control, and prescribed when and upon what conditions an election might be held. It is conceded that those conditions were disregarded, or at least one of them. Was that condition an essential one? We should not expect to find in the statute any express declaration that this or that provision was essential, leaving the inference that the others were not. True, we sometimes find words of prohibition so strong and clear as virtually to amount to such a declaration. But that is not the ordinary method of legislation. Generally the legislature prescribes the different steps to be taken in the conduct of the election, and there stops. No officer may rightfully disregard any. Each provision is to him a command, and if only the officer were to suffer a neglect of any, would vitiate the result. But the public is interested, rather than the officer. In the present case it can hardly be a question of any moment to the commissioners whether the county-seat be at Eldorado, or Augusta. It probably is a question of some interest and importance to the people of Butler county. It is hard, therefore, that the neglect or misconduct of an officer should work injury to the public. If the people have voted, why should the acts of their agents, be they what they may, ever defeat the result of that vote? One obvious reason is, that in the preservation of certain forms is found protection to the purity of the election. A disregard of these forms opens the door to and invites fraud. Hence it is proper that the legislature should prescribe rules and forms of proceeding, a disregard of which will in some

cases vitiate the election. It is not easy always to distinguish between what is essential and what is purely directory. It was said by the supreme court of Wisconsin in *The State, ex rel. Cothren, v. Lean*, 9 Wis., 292: "We understand the doctrine concerning directory statutes to be this: That where there is no substantial reason why the thing to be done might not as well be done after the time prescribed as before, no presumption that by allowing it to be so done it may work an injury or wrong, nothing in the act itself or in other acts relating to the same subject-matter indicating that the legislature did not intend that it should rather be done after the time prescribed than not to be done at all, there the courts assume that the intent was that if not done within the time prescribed, it might be done afterwards. But when any of these reasons intervene, then the limit is established." It is an old rule that time and place are of the substance of an election. This has its exceptions and limitations. Yet when the legislature has named a day on which an election shall be held, an election on any other day is void, and confers nothing. So when the proper authorities have designated certain places for the polls, an unnecessary removal to remote places will vitiate the election. Here the legislature has not named the day, or the month, but it has placed bounds within which it must be held, not less than thirty, that being the time of publication of notice, nor more than fifty days from the presentation of the petition. One reason of the rule above given is to avoid confusion and bring full knowledge of the election to each voter. Proclamation by the sheriff in a general election is required as well as publication of notice in this. Yet a proclamation naming a day other than that fixed by the statutes, followed by an election at that time, would be void. Knowledge of the time of an election is not obtained simply from a proclamation or a notice. Every one is supposed to know the law. As a matter of fact there is a general wide-spread information concerning the provisions of the statutes in reference to elections. Probably as many obtain their knowledge from the statute book as from proclama-

tion or notice. True, the statutes do not convey as accurate information concerning a county-seat as a general election. Yet a movement toward a county-seat election is a matter of public notoriety. A petition must be signed by a large proportion of the people. Action must be taken by the county board thereon. This gives general information. They have the statute declaring that county-seat elections must be held within fifty days after presentation of the petition. The fifty days pass; no notice is published, no time fixed. Can they not turn their attention to other matters, or must they remain on constant watch for notice of an election? If an election can be held at any time thereafter, upon thirty days' notice, there is a fair probability of its being held unknown to many of the voters. For if valid when held 106 days after presentation, it would be equally so 206 or 306 days thereafter. There is thus a presumption that by allowing such an election to stand, an injury and wrong may be done to some citizens, and therefore it comes within the scope of one of the tests laid down in the Wisconsin case above quoted. Again, if the county commissioners may wait 106 days, they may wait longer. They may watch and wait until sometime when many of the voters are absent on business or pleasure, and so deprive a large number of those interested of their choice in the matter, or until there has been a great increase or decrease in the population, and that population then desires no agitation of the question, and no expense of an election. This again shows a possibility of wrong and injury. And again, the county-seat question is a vexatious, annoying, deranging question. Parties arrange business, and establish homes, with reference to the county-seat. It becomes the center of many interests. Roads are opened, and local improvements made, with reference to it. Let it once be permanently established, and many elements of growth and prosperity will gather about it. County buildings must be erected. County records are there. Public business is there transacted. Lawyers' offices abound. Courts are held. Conventions meet. Railroads seek it. Travel passes

thither. Merchants seeking the county trade, locate. Each helps the other, and all tend to mutual prosperity. The very zeal and persistence with which county-seat contests are conducted is abundant proof of the general estimation of the value of such seats. The legislature could not have been ignorant of these things, and must be supposed to have legislated concerning them. Conceding the right of every county to change its county-seat whenever the public interests demanded, it nevertheless saw the necessity of a speedy termination of any question of change. If a change was necessary, let it be made, and that speedily. If unnecessary, let it be so decided, and as speedily. For while undecided, and in controversy, all these elements of growth and prosperity are still, and the whole county suffers, as well as individual towns. Values are unsettled; improvements stop; county commissioners are loth to add county buildings, for the people may abandon all and locate the county-seat elsewhere. The merchant waits till the question is terminated before he establishes business; and if the contest is protracted, moves on to some other county. No place is benefited; some are injured, and the whole county suffers. Hence the public good requires a speedy termination. In view of this, we must suppose the legislature acted. And having fixed the time within which such an election must be held, it seems to us it intended that compliance with this requirement should be essential to its validity. It may perhaps be worthy of notice, though only a slight circumstance, that the requirement of notice and the limitation of fifty days are both in the same section, and couched in the same terms of obligation. The publication of notice comes plainly within the decision in 1 Kas., 273, as essential to the validity of the election. Does it not seem reasonable that the legislature intended that both should be essential? We are led to the conclusion that the district court erred in its ruling, and the case will be remanded with instructions to reverse the order refusing a temporary injunction, and to proceed further in accordance with the views herein expressed. All the Justices concurring.