No. 20,251.

W. E. S. MIELY, *Appellant,* v. BERT METZGER, as Director, etc., et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. RURAL HIGH SCHOOL—*Legality of Organization—Can be Raised Only by the State.* The principle that the state alone can question the legality of the organization of a municipal corporation applied in an action brought by a taxpayer, suing under section 265 of the civil code, to enjoin a rural high-school district from securing a site for a school building and from issuing bonds for the construction of a school building.

2. SAME—*Locating Schoolhouse Site — Petition for Election — Location Sufficiently Definite.* Chapter 311 of the Laws of 1915, relating to the establishment of rural high-school districts, provides that the petition to the board of county commissioners to call an election to vote on establishing and locating a rural high school shall state the proposed location of the school. A petition gave the proposed location as "within Ozawkie, Kansas," Ozawkie being an unincorporated village within the boundaries of the proposed district. *Held;* the location was sufficiently definite, and that the district board, which is given power to secure a building site located as indicated, has authority to secure a site within the village of Ozawkie.

3. SAME—*Election—Bonds for High-school Building—Ballots Not Defective.* The statute referred to provides for voting on the subject of issuing bonds to construct a high-school building, the amount being stated in the petition, at the same time the organization of the district is voted on. It is held that ballots prepared according to the statute and used at an election were not defective because electors were given no opportunity to vote for constructing a building without issuing bonds.

4. SAME — *Territory Lying in Two Townships — Election — Location of Voting Places.* A proposed rural high-school district comprised territory lying in two municipal townships. The statute provides that the election shall be conducted according to the general election law when not contrary to the statute. It is held that the provision of the gen-

eral election law requiring a separate polling place for each township is not applicable. *Held*, further, that if the general law were applicable, and but one polling place in the proposed district were designated, the election would not be illegal or void unless electors were in fact misled or disfranchised.

Appeal from Jefferson district court; OSCAR RAINES, judge. Opinion filed April 8, 1916. Affirmed.

*W. O. Worswick*, of Oskaloosa, *Robert Stone*, and *George T. McDermott*, both of Topeka, for the appellant.

*H. T. Phinney*, and *H. N. Casebier*, both of Oskaloosa, for the appellees.

*Edwin Anderson*, of Council Grove, as *amicus curiæ*.

The opinion of the court was delivered by

BURCH, J.: The action was one to enjoin a rural high-school board from securing a site for a rural high-school building and from issuing bonds for the construction of such building. A temporary injunction was denied and the plaintiff appeals.

The plaintiff brought his action under section 265 of the civil code, authorizing a taxpayer to enjoin the illegal levy of a tax, to enjoin the collection of an illegal tax or any proceeding to enforce such tax, and to enjoin any public officer, board, or body from entering into any contract or doing any act which would result in the creation of an illegal tax or public burden. The organization of the rural high-school district, which was formed under the provisions of chapter 311 of the Laws of 1915, was attacked. The code provision cited did not authorize the plaintiff to question the legality of the corporate organization. The state alone can question the existence of the district as a corporate entity and its right to exercise corporate power. The principle is discussed in the cases of *Topeka v. Dwyer*, 70 Kan. 244, 78 Pac. 417, and *Horner v. City of Atchison*, 93 Kan. 557, 144 Pac. 1010. The opinions in those cases collate other decisions of this court.

The act of 1915, relating to the establishment of rural high-school districts, provides for a petition to the board of county commissioners to call an election, a call for a special election, notice of such an election, and an election held under the general election law, when not contrary to the act. The returns

are canvassed by the board of county commissioners and the result is reported to the county superintendent. Should the proposition submitted carry the county superintendent calls a meeting for the election of a rural high-school board. The rural high-school board is empowered to secure by donation, purchase or condemnation a site for the rural high-school building, located as provided in section 2 of the act, which reads in part as follows:

"Whenever a petition signed by two-fifths of the legal electors residing in the territory of the proposed rural high school district, to be determined by an enumeration taken for this purpose, shall be presented to the board of county commissioners of the county in which lies the greatest portion of territory comprising said district, reciting the boundaries of said proposed district and requesting said board of county commissioners to call a special election to vote on establishing and locating a rural high school and to vote bonds for the construction of a high school building, the proposed location and the amount of the bonds proposed to be stated in the petition, it shall be the duty of the board of county commissioners forthwith to call a special election in said proposed district to vote on establishing and locating a rural high school and to vote bonds therefor." (Laws 1915, ch. 311.)

It will be observed that the election is held to determine two questions, the establishing of a rural high-school district, the boundaries being stated in the petition, and the voting of bonds for the construction of a building, the proposed location and the amount of bonds being stated in the petition. The petition, which the election proclamation and the ballots used in the election substantially followed, gave the proposed location as "within Ozawkie, Kansas," Ozawkie being an unincorporated village within the boundaries of the proposed district. It is said that the electors alone were vested with authority to locate the proposed school, that they were not permitted to do so and did not do so because the proposed location was not stated with sufficient certainty, and that the power of the rural high-school board to secure a site is limited to securing the precise site selected by the electors. Numerous authorities are cited in which the words "locate" and "location" are held to refer to a definite spot designated with particularity and precision. The meaning of these words depends, of course, upon the subject matter and the context of the statute or instrument in which they occur. In the act of congress organizing the territory of Kansas the seat of government was "located tempo-

rarily at Fort Leavenworth." (Gen. Stat. 1909, § 66.) Section 8 of article 15 of the constitution reads as follows:

"The temporary seat of government is hereby located at the city of Topeka, county of Shawnee. The first legislature under this constitution shall provide by law for submitting the question of the permanent location of the capital to a popular vote, and a majority of all the votes cast at some general election shall be necessary for such location."

A state normal school was "permanently located at the town of Emporia" by the legislature. (Gen. Stat. 1909, § 8325.) Other illustrations might be given. One of the proper meanings of the word "location" is "locality." (Webster's New International Dictionary, title, location.) If, pending the election, one resident of the proposed district had inquired of another where the school building was to be located, the answer "in Ozawkie" would not only have been according to approved usage of the language (Gen. Stat. 1909, § 9037) but would doubtless have been satisfactorily definite. If the petition had designated the place where the school building was to be erected as the corner common to sections 29, 30, 31 and 32, no one could doubt that the location was specific and definite, although the matematical point was not intended and the particular acre, whether in one section or another, was not described. The court concludes that the location "within Ozawkie" was sufficiently definite and that the board has authority to secure a site within the limits of that locality.

The ballot used in the election contained two propositions: (1) to establish the district, and (2) to issue bonds in the sum of $10,000 to construct a building in Ozawkie. The ballot followed the statute, but it is said that the second proposition was dual in that an elector could, not vote for a high-school building without voting for bonds, although he might be in favor of a building and against issuing bonds. When first organized a district is necessarily without funds, and under all ordinary circumstances a site can not be secured, a building erected, and a high school instituted without a bond issue. The statute recognizes these conditions and provides for voting on a bond issue of a predetermined amount at the same time the organization of the district is voted on. Section 5 of the act, which authorizes the high-school board to exercise the power of taxation, contains the following provision:

"And shall make the necessary levy for taxes not to exceed four mills on the dollar of valuation on all taxable property in the rural high

school district, to pay teachers to create a certain fund to retire any indebtedness, and pay interest on the same, and the incidental expenses of said high school." (Laws 1915, ch. 311.)

The probabilities are so remote that with this limitation on its power to raise revenue a district could establish a high school in a building of its own without issuing bonds, the question of building or no building is in effect identical with the question of bonds or no bonds.

The district comprised territory lying in two municipal townships. The general election law provides for polling places in each township. The election was conducted at a single polling place within the proposed district. While the language of the statute makes the general election law applicable when not contrary to the statute, it evidently means that the general election law shall govern so far as applicable. It might be that all but a small fraction of a section of land would lie in one township. In such case a separate polling place for that tract would be absurd. The reasons which led to the adoption of the township as an election district for the holding of general elections do not apply, and the proposed school district in which the election is to be held should be regarded as the election district. Besides this, since it does not appear that any person was misled or disfranchised, or that the election was otherwise irregular or unlawful, holding it at an unauthorized place did not render it illegal or void. (*Wakefield v. Patterson,* 25 Kan. 709. See Note, "What Irregularities Will Avoid Elections," 90 Am. St. Rep. 46, 75.)

The failure to designate a separate polling place in each township was one of the objections made to the validity of the corporate organization. The other objection to the validity of the corporate organization was based on a clerical error, so evident as to correct itself, in describing the boundary of the proposed district. An objection to the constitutionality of the law was held to be not well taken in the case of *Rural School District v. Davis,* 96 Kan. 647, 152 Pac. 666.

The judgment of the district court is affirmed.