No. 41,460

W. G. WEBSTER, *Appellant*, v. THE KANSAS POWER AND LIGHT COMPANY and W. O. HOMER, *Appellees*.

(345 P. 2d 660)

Opinion filed November 7, 1959.

*Kenneth V. Moses*, of Marysville, and *Arthur S. Humphrey*, of Junction City, argued the cause and were on the briefs for appellant.

*C. L. Hoover*, of Junction City, argued the cause, and *Robert A. Schermerhorn* and *A. B. Fletcher, Jr.*, of Junction City, were with him on the briefs for appellee W. O. Homer.

*Robert E. Russell*, of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove, Willard N. VanSlyck, Jr., William B. McElhenny, O. R. Stites, Jr.*, and *James L. Grimes, Jr.*, all of Topeka, and *Charles I. Platt* and *Philip L. Harris*, of Junction City, were with him on the briefs for appellee The Kansas Power and Light Company.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover damages for the loss of real and personal property destroyed by an explosion of natural gas alleged to have been caused by the concurrent negligence of the defendants.

In a previous appeal (*Webster v. Kansas Power & Light Co.*, 182 Kan. 626, 323 P. 2d 643) we reversed the order of the district court sustaining the separate demurrers of the defendants to the plaintiff's evidence and held that under the facts and circumstances plaintiff was not guilty of contributory negligence as a matter of law in failing to notify the Kansas Power & Light Company that the backhoe used to dig a sewer trench on plaintiff's property had struck the gas main owned by the power company. The case was remanded to the district court for a new trial.

The pleadings, insofar as pertinent, were summarized in the former opinion and will not be set forth here. However, in order to better understand the nature of the controversy on this appeal, the evidence presented at the second trial will be set forth at some length although it is substantially the same as that presented at the first trial.

The plaintiff was the owner of two duplex apartment houses which he built in 1950 or 1951, located in Block 75, Railroad Addition to Junction City, Kansas. One was located at 719-721 and the other at 723-725 East 10th Street. Plaintiff and his wife lived

in the duplex at 723-725, and rented the apartment at 719 to the William Devore family and the apartment at 721 to the Ralph J. Lovell family. The Devores had lived at 719 for six years prior to the day in question, and the Lovells moved to 721 in February, 1955, and lived there until the explosion on May 25, 1955.

There was no sewer service in that part of the city until the fall of 1954, when the city laid a sewer main in the alley running north and south behind the duplexes. The sewer main was eight or ten feet below the surface of the ground and was about two feet to the west of the gas main owned by the power company, which was also located in the alley. The gas main was about two feet below the surface of the ground and located almost directly beneath the east portion of the lane traversed by vehicles normally using the alley.

On December 22, 1954, the plaintiff made arrangements with the defendant Homer to dig lateral trenches from the duplexes to the sewer main in the alley so they could be connected to the sewer. Homer sent his brother, "Red" Homer, with a backhoe, a machine used to dig trenches, to do the digging. Plaintiff watched the digging operation part of the time and at one time observed the backhoe come into contact with the gas main, raising it about one to two inches, making a slight upward bend in it. He could not tell if it was broken, and did not smell any gas escaping at that time. A hole about eight feet long, five feet wide and nine feet deep was dug in the alley so the plumbers could connect the sewer lateral from the duplex to the sewer main. The gas main was completely exposed the full length of the hole. The plumbers worked in the hole around the gas main and did not complain of gas fumes or odors at that time. The city came out and inspected the job after it was finished, and approved it. Plaintiff did not notify the power company that the backhoe had come into contact with the gas main.

Guy Dishman, who lived across the alley from plaintiff's duplexes, had Homer dig a lateral sewer trench to his property on December 23, the day after plaintiff's trench was dug. Dishman's connection to the sewer main was made at the same hole in the alley. Mrs. Dishman testified she was working in her kitchen at the time plaintiff's trench was being dug; that the gas pipe running from the meter to the heating stove made a loud vibration against the kitchen floor; that she went out to see what was going on and saw the main gas line exposed, with some bright shiny marks on the west side of the

pipe and at the top, north of their lead-in line. Her husband told her she need not notify the power company of what she had observed because they (Homer) would do that. Mr. Dishman testified that he had seen the shiny marks on the gas main. In addition, he, and other witnesses, testified that they had overheard a conversation between "Red" Homer, the operator of the backhoe, and Henry Zernickow, in which "Red" Homer said: "I hope you don't have the trouble that I had over to the Webster's for I hit the gas line and I hit it hard." The backhoe was used to dig sewer trenches for several people in the vicinity at that time.

Mr. Dishman also testified that he had agreed with plaintiff to fill in the hole in the alley if plaintiff would leave it open so he (Dishman) would not have to dig it again when he got ready to connect up to the sewer main; that over a period of eight years he had backfilled several trenches around both gas pipes and sewer pipes, and that he filled the hole on December 24, in the following manner:

"In filling my trench and the hole in the alley, I had Mr. Edwards with the Fordson Tractor and front end loader to fill the hole in the alley, and I was down in the hole with the hose and a shovel, and we worked the dirt in around, and I walked back and forth with the hose and tromped it. With the shovel I put the dirt below the gas main and tamped around underneath and worked my way out. I watered the dirt as it was pushed in and tamped it with the shovel and my feet. I wet it around and tromped it around the gas main, stomped on it, and walked back and forth. I left it fairly solid. *There was no settling in the hole before May 26, 1955. I saw it every day, and it stayed level on top. I was there the morning after the explosion, and the hole had not settled.* It was muddy." (Emphasis supplied.)

On cross-examination Dishman testified there was probably a ton and a half, maybe two tons, of dirt left after he filled the hole in the alley, which he spread over the sewer lateral in his back yard.

Plaintiff testified that the dirt in the hole did not settle, but there was some testimony to the contrary. There was testimony to the effect that the dirt used to fill at least one other lateral trench in the neighborhood had settled and was refilled.

Prior to the time the sewer lateral was dug, the tenants living in the duplex at 719-721 never complained of gas fumes or odors and they had very little difficulty with gas appliances. Subsequent to that time, however, the tenants made numerous complaints to the plaintiff and his wife about the presence of gas fumes and odors in the apartment and about the functioning of the gas appliances.

Each time a complaint was received, plaintiff's wife reported it to the power company and a man from the company was sent out. All of the suggestions or recommendations made by the power company to remedy the situation were complied with, but to no avail. Other repairmen and plumbers were called by plaintiff and their suggestions or recommendations were also complied with. The burners on the gas appliances were checked and adjusted; vent pipes on the gas appliances were installed or enlarged; a new smoke stack was installed on top of the duplex; one of the gas heating stoves was replaced, and a gas refrigerator was taken out of one of the apartments and subsequently found to work properly. Despite all of that, the gas fumes and odors continued in the Devore-Lovell apartments. At no time did the power company make any tests to determine if gas fumes were present outside the duplex, or if there was a leak in the gas main even though Mrs. Webster on one occasion requested it. Plaintiff's expert witness testified there are instruments generally used in the gas industry by distributors of gas to determine if there is gas under the ground and to determine if there are leaks in the gas main or pipeline.

On May 26, 1955, about six months after the sewer lateral was dug, and during the time the numerous complaints were made, William Devore struck a match to light the burner of the gas range in his apartment and an explosion followed immediately. The Devore-Lovell duplex was completely demolished and the force of the explosion smashed the west side of plaintiff's duplex. The shrubbery around the premises was destroyed and furnishings owned by plaintiff and located in the duplex in which the explosion occurred were also destroyed.

On the same day, the power company located a break in the gas main with a leak detector; dug up the gas main, and found the break in the threads of the pipe that went into the "T" at Dishman's service lateral. That was at the point where the gas main was exposed when the hole was dug in the alley.

The defendants demurred separately to plaintiff's evidence upon the grounds that it failed to prove a cause of action against them, and established as a matter of law plaintiff's contributory negligence. The district court sustained the demurrers. Hence, this appeal.

The main question presented is whether the court was correct in ruling that the plaintiff was guilty of contributory negligence as a

matter of law. Whether the plaintiff was guilty of contributory negligence as a matter of law in failing to notify the power company that the backhoe had come into contact with the gas main was before this court in the former appeal and was conclusively disposed of in the negative. In *Owen v. Ready Made Buildings, Inc.*, 181 Kan. 659, 313 P. 2d 267, it was held:

"When a second appeal is brought to this court in the same case the first decision is the settled law of the case on all questions involved in the first appeal and such questions are not subject to re-examination." (Syl. ¶ 1.)

See, also, *Waddell v. Woods*, 160 Kan. 481, 163 P. 2d 348; *Stanolind Oil & Gas Co. v. Cities Service Gas Co.*, 181 Kan. 526, 533, 534, 313 P. 2d 279, and *Witmer v. Estate of Brosius*, 184 Kan. 273, 336 P. 2d 455.

We are left with the defendants' contention that the plaintiff was guilty of contributory negligence as a matter of law in that he fully appreciated or comprehended the risk or danger of improperly backfilling the hole under and around the gas main, and that the hole was improperly backfilled. In support of their contention the defendants rely upon the testimony of Mrs. Webster to the effect that the plaintiff was experienced in the handling of appliances, steam boilers, and various other types of equipment, and upon plaintiff's testimony on cross-examination which the defendants claim clearly established he had a full appreciation or comprehension of the risk or danger involved in improperly backfilling the hole. In his testimony the plaintiff stated: (1) that common sense would dictate that the hole in the alley had to be properly backfilled, and (2) that, "Common sense would understand that nothing not properly done there might be some risk." At the conclusion of that part of the cross-examination the court said:

"*In substance hasn't this witness said that he is aware of the dangers of the improper backfilling of the hole? The Court is of the opinion that is in substance what he has said, as the Court sees it at the moment, at least. . . .*" (Emphasis supplied.)

On the other hand, plaintiff contends that whether his evidence was sufficient to establish a cause of action against the defendants and whether his evidence showed him to be guilty of contributory negligence were questions upon which reasonable minds could differ and therefore should have been submitted to the jury; hence, the district court erred in sustaining the demurrers to his evidence.

Of course, in ruling upon a demurrer to his evidence, the plaintiff is entitled to the benefit of all inferences and to have his evi-

dence considered in the most favorable light (*Webster v. Kansas Power & Light Co.*, supra; *Kendrick v. Atchison, T. & S. F. Rld, Co.*, 182 Kan. 249, 320 P. 2d 1061, and cases cited therein). Moreover, it is the rule that, when tested by a demurrer, a plaintiff's contributory negligence is a question which must be submitted to a jury if the facts are such that reasonable minds might reach different conclusions thereon (*Tuggle v. Cathers*, 174 Kan. 122, 254 P. 2d 807; *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 204 P. 2d 752; *Webster v. Kansas Power & Light Co.*, supra).

The difficulty with sustaining the defendants' contention is there was very little of plaintiff's evidence, if any, tending to show that the hole was improperly backfilled and there was substantial evidence to the contrary. The testimony with respect to improper backfilling was that the dirt had settled in the hole on the morning in question following a heavy rain, and that there was a ton and a half, or two tons, of dirt left over after the hole had been filled. In conflict with this evidence was plaintiff's testimony that the hole was not improperly backfilled and that the dirt had not settled; further, that he did not feel he was taking any risk. There was also Dishman's testimony that he had filled the hole and that the dirt had not settled whereas the dirt in another trench in the neighborhood had settled. The record fails to disclose anything tending to show that the procedure Dishman used in filling the hole was improper and a jury might well conclude that it was not improperly backfilled. Such questions should not be ruled upon by the court as a matter of law but should be submitted to the jury under proper instructions and this is especially true where there is conflicting evidence on them.

Before it can be said as a matter of law that the plaintiff was guilty of contributory negligence by reason of the fact that he appreciated or comprehended the risk or danger of improperly backfilling the hole, it must first be determined that the hole was in fact improperly backfilled, and, this, as we have stated, is not a question for the court to decide as a matter of law, but is a question for the jury. Should the jury determine the hole was improperly backfilled, the question would then arise whether, from all the facts and circumstances, the plaintiff appreciated or comprehended the risk or danger of that condition before it may be said he was guilty of contributory negligence. Obviously, unless the hole was improperly backfilled, there would be no risk or danger for the plaintiff to appreciate or comprehend. The defendants' contention being based upon a

purely fallacious assumption, namely, that the hole was improperly backfilled, is not meritorious.

We conclude the questions whether defendants were negligent and whether plaintiff was contributorily negligent were questions upon which reasonable minds might differ and under such circumstances they must be submitted to the jury for final determination (*Drake v. Moore*, 184 Kan. 309, 336 P. 2d 807; *Creten v. Chicago, Rock Island & Pac. Rld. Co.*, 184 Kan. 387, 396, 337 P. 2d 1003).

As previously indicated, the evidence presented at the second trial was substantially the same as that presented at the first trial. It raised a submissible issue as to the defendants' causative negligence, but was insufficient to require, as a matter of law, a finding of contributory negligence on the part of the plaintiff.

The judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

PRICE, J., dissents.