No. 43,808

RICHARD WYCOFF and RAYMOND WYCOFF, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LOGAN, KANSAS; CLAUDE M. FULTON, JACOB UHRICH and ROY KRONVALL, members of the Board of County Commissioners of the County of Logan, Kansas; and the following County Officers of Logan County, Kansas, to wit: HARRY B. PHELPS, County Attorney; MARJORIE WRIGHT, Register of Deeds; L. P. BAXTER, County Clerk; ADA F. ROGGE, Clerk of the District Court; NELL POTTERF, Probate Judge; FERN MAJORS, County Treasurer; and RUTH E. LANGDON, County Superintendent, *Appellees*.

(383 P. 2d 520)

Opinion filed July 10, 1963.

*James W. Wallace*, of Scott City, argued the cause, and *V. E. Artley*, of Russell Springs, and *D. B. Lang*, of Scott City, were with him on the briefs for appellants.

*Corwin C. Spencer*, of Oakley, argued the cause, and *C. A. Spencer*, *J. H. Jenson* and *Harry B. Phelps*, of Oakley, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to perpetually enjoin the defendants from removing the respective offices of the county seat of Logan County, Kansas, from Russell Springs to the city of Oakley. The action was brought by two plaintiffs who were electors and taxpayers of Logan County, "on their own behalf, and on behalf of other electors of Logan County, Kansas, in the same situation." The defendants were the Board of County Commissioners and seven other county officials. A temporary injunction was issued on November 16, 1960, enjoining the defendants from removing the county seat, and was dissolved on July 11, 1962,

when judgment was entered in their favor that the county seat be removed to the city of Oakley. As hereafter noted, both parties have appealed.

This case was previously before this court in *Wycoff v. Board of County Commissioners,* 189 Kan. 557, 370 P. 2d 138 (opinion filed April 7, 1962). That appeal was from an order overruling the plaintiffs' motion for judgment on the pleadings, and was dismissed upon the grounds that the appeal was not from a "final order" since issues of fact material to the disposition of the lawsuit were joined in the pleadings. One question raised in the present appeal was discussed and decided in the former opinion as hereafter noted.

No useful purpose would be served by reciting the many allegations of the various pleadings that have been filed. It is sufficient to say that since Logan County's organization (G. S. 1949, 18-155, 18-155a) the county seat has been located at Russell Springs and that the order of removal was made subsequent to a special election held on October 18, 1960, and conducted pursuant to the provisions of G. S. 1949, 19-1601 through 19-1630, inclusive, which require the vote of three-fifths or 60 percent of the legal electors to relocate the county seat and to remove it from its present location to the city of Oakley.

The pertinent proceedings preliminary to calling the election, the notices and holding of the election, and the result of the election, are summarized: The regular meeting day of the Board of County Commissioners is the first Monday of the month. (G. S. 1949, 19-206.) September 5, the first Monday in September, 1960, was Labor Day which is declared by statute to be a legal holiday. (G. S. 1949, 35-102.) The following day, September 6, two of the three commissioners, Claude M. Fulton and Jacob Uhrich, met with the county clerk in regular meeting to determine the number of legal electors whose names appeared on the last assessment rolls of the several township and city assessors of Logan County. (G. S. 1949, 19-1604.) One of the commissioners, G. H. Newcom, was absent because of illness. It was determined there were 2177 legal electors whose names were on the last assessment rolls and appeared on what was called the "master" list. Minutes were kept of the meeting.

The next day, September 7, the board convened with Fulton and Uhrich present. Newcom submitted his resignation from the board which was accepted and the two remaining commissioners and the

county clerk appointed Roy Kronvall to the board to replace New-com.  (G. S. 1949, 19-203.)  A petition calling for an election to relocate the county seat was presented and considered and the board determined that the petition bore the signatures of 1592 legal electors of Logan County whose names appeared on the last assessment rolls; that 62 of the signers to the petition had on that date requested their names be removed therefrom, leaving 1480 legal electors who were qualified to sign the petition and that such number was more than two-thirds of the 2177 legal electors of the county and was sufficient to call an election for the purpose stated pursuant to G. S. 1949, 19-1602 and 19-1604.

On September 12, 1960, the board fixed October 18, 1960, as the date of the special election to be held at the usual voting places at each of the election precincts in the county.  Notice of the special election was published by the county clerk proclaiming that such election would be held at the usual voting places at each of the election precincts of Logan County,

". . . for the purpose of determining the question of the relocation of the County Seat of Logan County, Kansas, by removing the County Seat from Russell Springs, its present location, to the townsite of Oakley in Logan County. . . ."

It further recited that the polls would be open in each of the precincts between the hours of 8:00 a. m. and 6:00 p. m.

Prior to the special election the usual voting places in Oakley township precinct No. 1 was the township hall and the usual voting place in Russell Springs township was the school.  Five days before the special election the county clerk published a second notice which stated that the polling place in Oakley township precinct No. 1 would be the city hall and that the polling place in Russell Springs would be the community center.  No other notice of election was published.

Thereafter, boards of registry were duly appointed and registry lists were prepared of all legal electors in each voting precinct as provided in G. S. 1949, 19-1613 through 1630, inclusive.

On October 18, 1960, the special election was held and the printed ballots furnished the electors stated the proposition to be voted upon as follows:

"Shall the County Seat of Logan County, Kansas, be removed to the City of Oakley, Kansas?"

On October 22, 1960, the result of the election was canvassed by the board of commissioners and it was determined that 1441 votes had been cast in favor of the proposition, 783 votes had been cast against the proposition, and 22 votes had been voided and not counted. The number of electors appearing on the various registry lists were totaled and found to be 2409. Standing thusly, the proposition was short the required 60 percent by 4.4 votes. The board then proceeded to canvass the list of qualified electors as prepared by the board of registry at each of the voting precincts to determine the number of legal electors against which to apply the number of "yes" votes to determine whether three-fifths of the legal electors had voted in favor of the proposition submitted. This was accomplished by the board by adding all the names on the various registry lists, and to that total adding the number of electors who had qualified and voted by affidavit pursuant to G. S. 1949, 19-1619, and deducting from the grand total the number of persons whose names appeared on the registry lists but who were known to the county commissioners not to possess the qualifications of legal electors on the date of the election. Accordingly, the names of eleven electors were subtracted from the registry lists for the reason that such persons were either minors, insane, aliens or non-residents of the county. The board then determined that on the date of the election there were 2398 legal electors of the county entitled to vote, that more than three-fifths of the legal electors had voted in favor of the proposition to relocate the county seat, and it proclaimed the city of Oakley to be the county seat of Logan County.

By direction of G. S. 1949, 19-1609, the county officers were required within twenty days thereafter to remove the county records to the county seat. To prevent this, the plaintiffs filed this action to enjoin the move challenging, among other things, the official composition of the Board of Commissioners and the validity of their acts as commissioners; the sufficiency of the petitions calling for the election; the sufficiency of the notice of election and the ballot; voting irregularities, and the elector status of persons named on four exhibits attached to the petition, summarized as follows: (1) the eleven names subtracted from the registry lists by the board when it canvassed the results of the election; (2) 58 alleged legal electors whose names did not appear on the registry lists and who did not qualify themselves to vote by affidavit as prescribed

by G. S. 1949, 19-1619; (3) fourteen persons who were alleged to not be legal electors but who signed the petition for calling the election, and (4) 37 persons alleged to be legal electors whose names appeared on the last assessment rolls and not considered in determining the sufficiency of the petition for calling the election.

The defendants' answer denied all of plaintiffs' allegations and alleged, among other things,

". . . that the said election, the canvass thereof, the determination of the number of legal·electors of Logan County, Kansas, on the date thereof, and the resulting proclamation of the results thereof were in all respects regular and in accordance with the law."

Trial was to the court, which consumed some ten days. After a full hearing, where many witnesses for both sides testified, resulting in hundreds of pages of transcript, the district court made 29 findings of fact and conclusions of law, finding specifically that the procedures preliminary to the election to remove the county seat to Oakley were sufficient and that the election carried, and entered judgment ordering removal of the county seat to the city of Oakley. The plaintiffs have appealed from the judgment and order overruling their motion for a new trial, and the defendant board, while in accord with the final judgment, has cross-appealed from adverse findings and conclusions that named persons were not legal electors of the county on October 18, 1960, and from that part of the judgment assessing one-half of the costs to the defendant board.

We now turn to the merits of the appeal. Prior to the trial the plaintiffs filed a motion asking for a determination of certain contentions and requested conclusions of law in advance of trial on thirteen different points, among which was the question whether the Board of Commissioners sitting as a board of canvassers had the right to determine the qualification of electors whose names appeared on the lists of registry. The question involved the power of the board of canvassers to subtract eleven names from the registry lists as not being qualified electors and permit the board to determine that the required 60 percent of the legal electors had voted in favor of removing the county seat. In ruling upon the motion, the court concluded as a matter of law that the board of canvassers "had the right" to determine whether one listed on the registry was a qualified elector, and stated,

"The names of persons appearing on the register of election who are not

qualified electors of Logan County, Kansas, under the constitution and laws of the State of Kansas, on October 18, 1960, the date of the election, shall not be counted in determining the number of eligible voters or 'legal electors' for such election of said county on said date. The board of county commissioners as the board of canvassers had the right to make such determination subject to the duties of this court in this contest proceedings. . . ."

Following the trial, and in its findings of fact and conclusions of law upon which judgment was rendered, the court reversed itself on the point, and concluded,

"The board of county commissioners had no statutory or constitutional authority at any time before or after the election to determine the names or the eligibility of electors on the registers in the various precincts. That authority belonged to the boards of registry in the various precincts by statute. The board of county commissioners had no legal power of appointment and no supervisory power over the precinct boards of registry."

It is unnecessary to summarize Sections 19-1613 through 19-1630, inclusive, dealing with the registration of electors of a county where an election has been called to locate or relocate the county seat. That was done in *Dunn v. Board of County Comm'rs of Morton County*, 165 Kan. 314, 194 P. 2d 924, and it was held that the purpose of the foregoing sections,

". . . is to provide a basic list to be used by election officials in the various voting precincts in determining the persons entitled to vote at such elections." (Syl. ¶ 2.)

It is a common error for a canvassing board to overestimate its power, and it has no right to subtract any name from the lists of registry in determining the total number of legal electors of the county. Its duty is ministerial only and its sole function is to meet, canvass the vote, and declare the results. (*Lewis v. Comm'rs of Marshall Co.*, 16 Kan. 102, 22 Am. R. 275; *Brown v. Comm'rs of Rush Co.*, 38 Kan. 436, 439, 17 Pac. 304; *Sharpless v. Buckles*, 65 Kan. 838, 840, 70 Pac. 886.)

While the Sections 19-1613 through 19-1630 do not specifically state that the total number of persons shown on the final registration lists shall constitute the total number of the legal electors for the purpose of determining whether the required percentage has voted in favor of the proposition (*Dunn v. Board of County Comm'rs of Morton County*, supra), it is apparent in the statutory scheme that such total number could not be used for that purpose since a legal elector whose name does not appear on a registry list may qualify himself and vote by affidavit as prescribed by 19-1619.

Hence, in determining whether the number of affirmative votes constitute three-fifths or more of the legal electors of the county, the board is required to determine that number by adding the names on the various registry lists and adding to that total the number of those qualifying and voting by affidavit. We find no statutory authority for the Board of Commissioners either before or after the election to determine the eligibility of electors on the lists of registry, or to subtract from such lists the names of persons appearing thereon in canvassing the results of such an election. Where, as here, it is conceded that the returns and lists of registry were regular in form and genuine, the question whether an elector whose name appeared on a list of registry was or was not a legal elector of the county is judicial in nature and one to be passed upon by a court of competent jurisdiction when the election is contested. (*Dunn v. Board of County Comm'rs of Morton County*, supra; *State v. Morton County Comm'rs*, 121 Kan. 191, 246 Pac. 504.) On this point the cross-appeal of the Board of County Commissioners cannot be sustained.

The plaintiffs next argue that the district court's erroneous ruling in advance of trial on the question of law just discussed shifted the burden of proof and had the effect of requiring them to go through ten days of trial with a burden which was not theirs, and to accept the affirmative of a proposition which was not their own. We do not agree. Despite the fact that the Board of Commissioners erroneously concluded it had the right to subtract from the lists of registry the names of eleven persons as not being qualified electors and thereby proclaimed a favorable result for the election, the proclamation was nonetheless made on October 22, 1960. As the matter then stood, the county officials were required within twenty days to remove the county records from Russell Springs to Oakley. To prevent such removal, it was incumbent upon the plaintiffs to file an action contesting the election, which they did. As we have seen, the plaintiffs made various allegations challenging the move, which were all denied by the defendants who affirmatively alleged that the calling of the election, the election itself, the canvass thereof, and the resulting proclamation were in all respects regular and in accordance with the law. Whether the district court did or did not make erroneous conclusions of law before or during the trial did not shift the plaintiffs' burden of providing the allegations of their petition by a preponderance of the evidence. It is well

settled that the burden of proving a disputed fact or issue rests upon the party asserting it, or having the affirmative of the issue, and remains with him throughout the trial. (*Miller v. Kruggel,* 165 Kan. 435, Syl. ¶ 4, 195 P. 2d 597.) In *In re Estate of Wright,* 170 Kan. 600, 228 P. 2d 911, it was said:

". . . It is an elementary rule of law that the burden of proof on any point is upon the party asserting it, and it was incumbent upon appellants to prove the allegations of their petition by a preponderance of the evidence. (*Miller v. Kruggel,* 165 Kan. 435, 195 P. 2d 597; 31 C. J. S. 709; 20 Am. Jur. 134.)" (l. c. 604.)

The district court correctly ruled that the burden of proof was upon the plaintiffs throughout the trial.

The plaintiffs urge that the notice of the special election was defective and void for several reasons: (1) that it did not designate the place of voting, or the time, place and purpose of the meeting of the boards of registry; (2) that the election was held at a place other than stated in the notice, and (3) that it stated a proposition other than stated on the ballot. The notice stated that on the 18th day of October, 1960, the election would be held "at the usual voting places in each of the election precincts" of the county. G. S. 1949, 19-1605 provides for notice of the election and where it will be held, and reads:

"The elections provided for in this act shall be held within fifty days after the presentation of the petition therefor; and the county commissioners shall cause thirty days' notice of any such election to be given, by publication in one or more newspapers published in the county, or by posting written or printed notices at the several voting places in the county."

It is observed that notice of election may be given by publication in one or more newspapers, or by posting written or printed notices "at the several voting places in the county." In the instant case, the notice of election was published in a newspaper each week for five consecutive weeks prior to the election. Notice of the polling places used at the special election was given over the signature of the county clerk and the usual voting places designated in the notice were those actually used for the election. While no written or printed notices were posted "at the several voting places," the notice given by the county clerk provided that the election would be held "at the usual voting places." On its face the notice would seem to be sufficient under the statute. It is an old rule that time and place are of the substance of an election (*Gossard v. Vaught,*

10 Kan. 162, 167), and it is well known that a county-seat question is vexatious, annoying and deranging, and an election to relocate a county seat is a matter of public notoriety. Considering all the facts and circumstances here present, we think the notice of election designating the polling places which were used was sufficient to adequately inform the electors of the county where to vote, that it, at "the usual voting places" in their precincts. Moreover, more than 93 percent of persons qualified to vote went to the polling places so designated and cast their votes either for or against the proposition to remove the county seat. We think that is ample evidence that no person was mislead or disfranchised by the fact that the notice of election provided they would vote "at the usual voting places" in their precincts. (*Wakefield v. Patterson*, 25 Kan. 709; *Miely v. Metzger*, 97 Kan. 804, 808, 156 Pac. 753.)

Neither was the notice of election void for the reason that it did not designate the time, place and purpose of the meetings of the boards of registry. A county-seat relocation election is a creature of the statute and there is no provision requiring such notice. The boards of registry are appointed and the time of their meetings and the function they are to perform are prescribed by Sections 19-1613 through 19-1630, inclusive. Those sections were interpreted by this court in *Dunn v. Board of County Comm'rs of Morton County*, supra, and show with what detail the legislature has provided for establishing a list of those entitled to vote on propositions to locate or relocate county seats. In the opinion it was said:

"Briefly summarized, this special registration law provides that judges of elections shall constitute the board of registry for their respective voting precincts; that they shall meet three weeks preceding any election for the permanent location or relocation of county seats and make a list of all persons qualified and entitled to vote at the ensuing election, and this list shall constitute an election register (19-1613); *the election boards shall enter on said list the names of persons residing in the precinct whose names appear on the poll book of the precinct at the last preceding election. In addition to those names the board shall enter the names of all other persons who are well known by them to be qualified electors of the precinct and shall strike from the poll book lists the names of those who have died or have removed from the precinct.* Each of the judges shall keep a copy of the list so prepared for his use on the day provided for revision of the list, and one copy shall be posted in some conspicuous place where the election is to be held in the precinct and be accessible for examination by any elector who may desire to examine it. (G. S. 1935, 19-1614.) On Tuesday of the week preceding the election,

the board shall meet in their respective voting precincts for the purpose of revising, correcting, and completing these lists. (G. S. 1935, 19-1616.) The proceedings of the board shall be opened and all persons residing and entitled to vote in the precinct shall be entitled to be heard in relation to corrections or additions to the register. (G. S. 1935, 19-1617.) Section 19-1618 relates to procedure and evidence to be received in the revision and correction of these registration lists. After the registration lists have been fully completed within three days of the second meeting of the board, four certified copies of the lists must be made, one of which shall be filed with the township clerk, and one of which shall be delivered to each of the judges. The judges shall preserve these lists for use on election day and designate one of their number at the opening of the polls to check the name of every voter voting whose name is on the register. *No vote shall be received if the name of the person offering to vote is not on the register unless he furnishes an affidavit stating that he is an inhabitant of the precinct entitled to vote therein, and also furnishes an affidavit of a householder and registered voter of the precinct that he knows such person to be an inhabitant of the precinct.* Any person whether his name be on the list or not may be challenged by the judge or any legal elector. (G. S. 1935, 19-1619.) After the canvass of the votes the poll books and the register shall be attached together and filed on the following day with the township clerk and a duplicate returned to the county clerk. (G. S. 1935, 19-1621.)" (l. c. 324, 325.) (Emphasis supplied.)

The plaintiffs contend that to deny a person the right to register is in effect to add a three-fifths affirmative vote to the end result even though the registrant neither votes nor registers; that their petition listed 58 persons who were legal electors but whose names did not appear on the registry lists and had those persons been so listed, even though they did not vote, the proposition submitted would have failed by 35 votes; that since the election in question was a special election there was a mandatory obligation that each be informed of his right to register, thus establishing his right of suffrage; that those qualified electors absent in military service could not know of that right in the absence of notice or that their right of suffrage would depend upon their being registered, and conversely, that their failure to be registered could affect the result of the election. There was introduced in evidence ballots of absentee service personnel who submitted affidavits establishing qualification to vote in Logan County in the November, 1960, general election which affidavits were filed in the county clerk's office on October 11, 1960, and the names of three such persons were not included on the lists of registry. Also, wives of service men voted by absentee ballot and other persons voted personally in the November, 1960, general election whose names were omitted

from the lists of registry. The plaintiffs contend that had those persons been registered the result of the election would have been affected and had they been informed, they and others might have had their names entered on the lists of registry.

The plaintiffs mistake the purpose of the lists of registry. Those lists are established to provide a basic list of legal electors to be used by election officials to determine persons entitled to vote, and whether the proposition carried by the required percentage. (*Dunn v. Board of County Comm'rs of Morton County,* supra.) No statutory notice of the meetings of the boards of registry was required to be given, and no legal elector was required to appear before such boards in order to have his name placed on the registry lists—that was automatic with respect to all known electors of the precincts. There is a presumption that the boards of registry acted in accordance with the law and upon proper and adequate information and there is no evidence or suggestion of fraud. After the initial registry lists were prepared they were subject to revision and correction (19-1616-19-1618), and finally, any qualified elector whose name may have been omitted was entitled to cast his ballot by qualifying himself pursuant to 19-1619. Had the 58 persons alleged to be legal electors qualified themselves and voted pursuant to 19-1619, their votes against the proposition would have been counted. We note, however, that our statute which permits voting by citizens absent from the state does not apply to a special election such as here considered. It applies only to primary and general elections and to the offices specifically designated. (G. S. 1961 Supp., 25-1102.)

With respect to plaintiffs second point, we think the county clerk's notice five days preceding the holding of the election changing the polling place of precinct No. 1 in Oakley from the township hall to the city hall and in Russell Springs from the school to the community center was ample notice of the voting places of those precincts. The change from "the usual voting places" in those precincts was specifically designated in the county clerk's second notice to known public places and the polling places designated were not so remote as to vitiate the election. (*Gossard v. Vaught,* supra, p. 167; *Miely v. Metzger,* supra, p. 808.)

The third point urged by the plaintiffs was presented to this court and decided adversely to them in the previous appeal. There, the plaintiffs contended they were entitled to judgment for the

reason that the notice did not set forth the polling places, and, further, that the proposition stated both in the notice and on the ballot did not fully inform the electors of the place to which the county seat would be removed. The notice stated that the purpose of the election was the relocation of the county seat from its present location "to the townsite of Oakley." The ballot stated the proposition to be voted on was "Shall the County Seat of Logan County, Kansas, be Removed to the City of Oakley, Kansas?" In *Wycoff v. Board of County Comm'rs,* supra, it was said:

". . . Only by a strained construction of the English language could the voters have been mislead by the proposition stated on the ballot. We think the proposition as stated, both in the notice and on the ballot, clearly states the substance of the question on which the electors were called upon to vote." (l. c. 560.)

The foregoing became the law of this case and the notice of election and the ballot should not be subject to further review. (*Webster v. Kansas Power & Light Co.,* 185 Kan. 498, 503, 345 P. 2d 660, and cases cited.) As tending to bear on this point see *Miely v. Metzger,* supra; *School District v. Davis,* 99 Kan. 185, 186, 160 Pac. 1008, and *Johnson County Comm'rs v. Robb,* 161 Kan. 683, 697, 699, 171 P. 2d 784.

In its findings of fact the district court determined that twelve persons listed on the registry were not qualified electors on October 18, 1960, because of residence elsewhere and the total of legal electors should be reduced by that number. The plaintiffs contend that in the absence of evidence challenging the right of such persons to be registered, the district court erred in admitting evidence that they were nonresidents of the county. Under the issues formed by the pleadings, the district court was required to do two things in order to determine the result of the election. First, determine the number of "yes" votes, and second, the number of legal electors against which the statutory percentage should be applied. These acts were independent of each other, and persons not possessing all of the constitutional and statutory requirements of a legal voter should not be counted regardless of whether he did or did not vote in the election. In *State v. Dunn,* 118 Kan. 184, 235 Pac. 132, it was said:

"The first question is, Who are 'qualified electors' within the meaning of the statute? It is well settled in this state that the legislature may require registration as a prerequisite to the right to vote. (*The State v. Butts,* 31 Kan. 537, 2 Pac. 618.) In the cities where registration is required, an elector

is a person having the constitutional qualifications of an elector and who is duly and properly registered. (*Coney v. City of Topeka,* 96 Kan. 46, 149 Pac. 689.) In *Clayton v. Hill City,* 111 Kan. 595, 207 Pac. 770, the term 'qualified electors' was construed to mean persons entitled to vote. Hence the words 'qualified electors' in this statute means persons who have the constitutional (Const., art. 5, §§ 1, 4) qualifications of an elector and who are duly and properly registered. . . ." (1. c. 186, 187.)

As stated in the case of *State v. Morton County Comm'rs,* 121 Kan. 191, 192, 246 Pac. 504, in referring to the petition for election, it was said:

". . . But removal of a county seat is a subject of present practical interest at the time removal proceedings are initiated, and the body of electors . . . does not include those on the rolls who died or who removed from the county before presentation of the removal petition." (1. c. 192.)

Article 5 of the Constitution of Kansas prescribes the qualifications of electors as follows:

"§1. Every citizen of the United States of the age of twenty-one years and upwards—who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he or she offers to vote, at least thirty days next preceding such election—shall be deemed a qualified elector.

"§2. No person under guardianship, *non compos mentis,* or insane . . . shall be qualified to vote or hold office in this state . . ."

After a full hearing upon all contested individual cases, the court found there were persons whose names appeared on the various lists of registry who were not qualified electors and entitled to vote. Those persons known or proved to be aliens, nonresidents, deceased, minors, under guardianship, *non compos mentis,* insane, or otherwise disqualified on October 18, 1960, were not properly on the registries of election and should not have been counted among the legal electors of Logan County. The district court did not err in determining that the twelve persons named in finding of fact No. 23 were not qualified electors on the day of election because of nonresidence in the county despite the fact there was no evidence of challenge prior to their being registered.

The plaintiffs contend that where an unqualified elector voted, the number of "yes" votes should be reduced and that the court erred in failing to make a finding as to the total number of illegally cast votes. The contention is based upon the theory that a vote cast by an unqualified elector does not count, and that where the

ballot cannot be identified, a presumption arises it was cast in favor of the proposition since it is impossible to establish it was a "no" vote. The point is not well taken. In the first place the burden of proof was upon the plaintiffs to establish the number of illegal votes and in the second place they did not request the court to make a specific finding on the point. The record shows but one incident where it was determined how any elector voted—that was Violet Eastman named in finding No. 23 (a). She testified that she voted "yes" and her vote was not counted because the court found she was not a resident of the county and accordingly reduced the number of "yes" votes by one. No attempt was made to show how any other person voted, even Mary Lou Swanlund whom the plaintiffs alleged voted in favor of the proposition but which the defendants denied. The court was required to decide questions of fact upon the evidence produced. (*Jones v. Jones*, 155 Kan. 213, 218, 124 P. 2d 457.)

The plaintiffs next contend that the district court erred in failing to make specific findings of fact and conclusions of law based thereon. The contention deals with the district court's finding of fact No. 26, which reads:

"The remaining issues raised by the plaintiffs in their amended petition, namely, contentions:
"That the defendant county commissioners were not qualified,
"That their acts were void and without legal effect,
"That the initiating petitions were insufficient,
"That the election of October 18, 1960, was illegal,
"That there was not sufficient notice of election and of polling places and of meetings of boards of registry,
"That acts of the boards of registry were insufficient,
"That the ballot used in the election was insufficient, have all been considered by the court, and the court finds generally against the plaintiffs on all of them."

The plaintiffs assert the court left undetermined vital questions whether the list of eligible petitioners was accurate, whether the procedure used to prepare the petition was correct, what constituted the last assessment rolls and whether there were names that should have been added, whether the petition was timely presented, and whether it was acted upon at a regular or special meeting of the board.

The record speaks for itself. The plaintiffs made no request for any specific findings, nor did they ask for additional findings fol-

lowing the filing of the district court's findings of fact and conclusions of law. It is well settled that where a case is tried by the court and a general finding made in favor of the defendant and no special findings are requested or made, the general finding includes every material fact necessary to sustain the judgment based upon such finding, and where there is some evidence to support the general finding and judgment, it will not be disturbed. (*Biltgen v. Biltgen,* 121 Kan. 716, 250 Pac. 265; *Sledd v. Munsell,* 149 Kan. 110, 86 P. 2d 567; *Dryden v. Rogers,* 181 Kan. 154, 157, 309 P. 2d 409; *Huebert v. Sappio,* 186 Kan. 740, 742 352 P. 2d 939.)

In connection with the foregoing, the plaintiffs urge that the petition for calling the election was not signed by the requisite number of qualified electors. After a full hearing in which the eligibility of all persons claimed by the plaintiffs to be qualified electors was presented, some of which is abstracted in some 46 pages of the abstract, the district court specifically found against the plaintiffs' contention that the initiating petition was insufficent. The court was not required to make a finding as to each individual whether he was or was not a qualified petitioner or to point out the specific reasons why he was or was not qualified. The issue before the court was *the sufficiency of the petition* and the court made a general finding that it was sufficient. Inherent in such a finding was that it was signed by more than three-fifths of the legal electors of the county whose names appeared on the last assessment rolls of the several township and city assessors of the county. It is well settled that a general finding made by a district court determines every controverted question of fact in support of which evidence has been introduced and that such a finding by the district court raises a presumption that it found all facts necessary to sustain and support the judgment. (*Dryden v. Rogers,* supra; *Nauman v. Kenosha Auto Transport Co.,* 186 Kan. 305, 308, 349 P. 2d 931; *In re Estate of Duncan,* 186 Kan. 427, 433, 350 P. 2d 1112.)

The plaintiffs next contend the district court erred in failing to add to the registers or add to the official count of legal electors as of October 18, 1960, the names of the 58 alleged qualified electors. The court ruled on this question of law in advance of trial and concluded that persons who may otherwise have been qualified electors on October 18, 1960, but whose names did not appear on the lists of registry and who did not qualify themselves and vote by affidavit (19-1619) should not be counted in determining the

number of legal voters of the county since to count such persons would in effect permit the addition of what would be tantamount to negative votes subsequent to the election. During the trial the court repeated the ruling, but it patiently permitted the plaintiffs to introduce evidence of the residence of each of the 58 persons. In its findings of fact and conclusions of law the court reiterated its previous ruling, and found that the evidence introduced by the plaintiffs was immaterial and it made no special findings based on such immaterial evidence.

Without question, the court's ruling was correct, both by the statute and our decision in *Dunn v. Board of County Comm'rs of Morton County*, supra. After providing for the compilation and final revision of the lists of registry, the legislature provided in 19-1619 as follows:

". . . No vote shall be received at any such election, if the name of the person offering to vote be not on said register as corrected, unless the person offering to vote shall furnish to the judges of the election his affidavit, in writing, stating therein that he is an inhabitant of said precinct, and entitled to vote therein at such election, and prove by the affidavit of a householder and registered voter of the precinct in which he offers to vote, that he knows such person to be an inhabitant of the precinct, giving the residence of such person within said precinct. . . ."

Clearly, the court did not err in refusing to consider such evidence.

The plaintiffs advanced arguments concerning the deposition of one Jennie Hazen and that written objections were interposed thereto prior to trial. We fail to see how the plaintiffs were prejudiced. At the commencement of the trial the court considered the objections to the deposition and overruled them.

The point is made that the Board of County Commissioners was not qualified to act when it determined the sufficiency of the petition for calling an election. While the record indicates that Kronvall had not taken and filed his oath of office on September 7, 1960, the remaining two commissioners, Fulton and Uhrich, had previously qualified by filing their oaths of office (G. S. 1949, 54-106) and they were authorized as the majority of the board to adopt the resolution finding the petition sufficient for calling the election. (G. S. 1949, 77-201, *Fourth*.)

Basic questions presented in this election contest simmer down to who were legal electors of the county and who was to determine that question. A full trial was had on all issues presented by the

pleadings with respect to numerous persons the plaintiffs alleged should be added to the registries of qualified electors, and of various persons alleged by the defendants to be disqualified as legal electors who were listed on the registries as qualified electors, including and in addition to the eleven persons the board failed to count as qualified electors at the canvass. After hearing all the evidence the court concluded that the total "yes" votes exceeded the required three-fifths of the legal electors by 2.4 votes, and it entered judgment that the county seat be removed to the city of Oakley. The record indicates there was ample evidence to support the court's findings and judgment.

As previously indicated, the defendants cross-appealed from the judgment taxing one-half of the costs to the board. This point involved the question whether the board could legally reduce the total number of legal electors when it canvassed the vote. The district court concluded it could not, and we agree.

In view of the conclusion heretofore announced, we do not consider the defendants' contention the court erred in refusing to find that other persons whose names appeared on the lists of registry and who voted were not legal electors of the county. As the district court's judgment presently stands there were sufficient affirmative votes to remove the county seat of Logan County to the city of Oakley. That judgment is affirmed.