No. 43,738

WILLIAM F. KRAMER, HELEN KRAMER BIERSMITH, JOSEPH M. KRAMER and JOSEPH M. KRAMER and HELEN KRAMER BIERSMITH, Executors of the Estate of Andrew A. Kramer, Deceased, Co-Partners, d/b/a COLUMBIAN STEEL TANK COMPANY, *Appellants,* v. FARMERS ELEVATOR COMPANY, a Corporation, *Appellee.*

(393 P. 2d 998)

Opinion filed July 14, 1964.

*Donald E. Lyons,* of Kansas City, Missouri, argued the cause, and *Dan R. Aul,* of Sabetha, and *Richard W. Shaw,* of Hiawatha, were with him on the briefs for the appellants.

*Harry A. Lanning,* of Seneca, argued the cause, and *Thomas L. Medill, Jr.,* and *William M. Drumm,* both of Seneca, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal springs from an action to recover the purchase price of two steel grain storage bins and accessories.

The petition alleged that the order for the storage bins was placed by Robert Scraper, defendant's agent. The prayer asked for judgment against the defendant in the amount of $6,322.96 with interest and for the foreclosure of a mechanic's lien.

The answer denied that defendant had at any time ordered the storage bins and further denied that Scaper was its agent or authorized to make the purchase for it.

In their amended reply plaintiffs alleged that the defendant with full knowledge of the facts ratified the acts of Scraper and is estopped to deny liability for the purchase price.

The case was presented to the trial court on the theory of ratification of the unauthorized purchase by one professing to be an agent.

The undisputed facts will first be stated as briefly as the state of the record permits.

On June 15, 1961, the defendant entered into a written contract with Robert Scraper, doing business as Scraper Mill Service, for the construction of two grain storage bins with accessories on defendant's premises for a total price of $9,000.00. The sum of $900.00 was paid on the signing of the contract. The balance was to be paid as the material was delivered to the job site and invoices presented. The building of the bins was to be completed July 20, 1961.

On June 16, 1961, Scraper ordered the bins and accessories from plaintiffs by telephone. Sometime near the first of July, 1961, the defendant orally agreed with Scraper that the bins would be picked up in Kansas City by defendant or shipped out by rail or truck at the cost of defendant.

On July 5 or 6, 1961, Scraper left a note on defendant's elevator door informing it that the bins were ready to be picked up in Kansas City. Up to this point there is no evidence that the plaintiffs had any contract with the defendant.

On July 7, 1961, defendant sent a Mr. Leveret, an independent trucker, to plaintiffs' place of business in Kansas City to pick up the storage bins. On the same date a bill of lading was mailed to defendant by plaintiffs which described the material and stated that it was "consigned to Farmers Elevator Company." On the same date plaintiffs addressed a letter to defendant which reads:

"We were advised by Mr. Bob Scraper of the Scraper Mill Service, Hiawatha, Kansas that your truck would pick up the two Columbian BIG BINS,

36′ diameter x 24′ shell height, less bottom with 10″ auger tube in the second ring and a small door also in the second ring.

"List price on this equipment for one tank was $4,330.00 or a total of $8,660.00 for two. To this amount you are entitled to a 25 and 5 percent discount making the net $6,170.25. To this amount we have added 2½ percent Kansas Use Tax or $154.26 for a total of $6,324.51.

"This material has been picked up today, Friday, July 7, and should be in your hands by the time this letter reaches your company.

"We sincerely trust that the arrangements that have been made meet with your approval and that this bin will give you many years of good, satisfactory storage.

"If we can be of further help to you and your company in any way please do not hesitate to let us know."

July 7, 1961, the plaintiffs also mailed an invoice to defendant which listed the material and showed a total amount due in the sum of $6,322.96. July 8, 1961, the material was delivered to the premises of the defendant. July 14, 1961, defendant paid Scraper the $6,322.96 mentioned in the invoice.

July 31, 1961, plaintiffs mailed defendant a statement showing a balance due of $6,322.96. Defendant wrote on the statement "this was paid to Scraper Mill Service on July 14, 1961, and returned such statement to plaintiffs.

October 11, 1961, plaintiffs filed a mechanic's lien statement claiming a lien for materials furnished under a contract with the owner of a lease-holder interest in the premises.

The oral testimony of the respective parties, on which the trial court necessarily reached its conclusion, was in direct conflict and will be summarized in part.

Mr. Parsons, sales manager for plaintiff, testified that on June 16, 1961, Scraper telephoned him long distance and advised him that Farmers Elevator Company of Seneca, Kansas, wanted to purchase from Columbian Steel Tank Company two Columbian big bins 36 feet by 34 feet less bottom, 10 foot auger tubes in the second ring, and small door in the second ring. He further testified that in his conversation with Scraper, Scraper said that he was authorized to make this purchase for and on behalf of the Farmers Elevator Company and that they had approved the purchase of this material from Columbian.

The testimony of Scraper is summarized in the plaintiffs' abstract as follows:

"Mr. Robert Scraper, Hiawatha, Kansas, was called as the first witness for Appellee and testified in substance that he had never ordered any material on

June 16, 1961, for Farmers Elevator Company from Columbian Steel Tank Company and denied the testimony of appellant's witnesses."

It may be here noted that if Scraper's testimony is to be given credence there was no unauthorized act, by one professing to be an agent, to be ratified.

Mr. Parsons further testified that he inspected the bins at defendant's premises and on this occasion Mr. Haverkamp told him that Mr. Scraper had obtained payment of $6,322.96 from the Farmers Elevator Company, which it owed Columbian Steel Tank Company only because he, Haverkamp, was out of town and that this would not have been paid him had he been there.

Mr. Haverkamp, who was manager for the defendant elevator company, testified that when an inspection of the bins had been made, Mr. Parsons said this type of bin would require extra bases at a cost of about $480.00, and this extra material was delivered and paid for; that the conversation as to the rest of the bill, *Mr. Parsons said that Bob Scraper had not paid for these bins but had agreed to pay for this building out of his commissions.* (Emphasis supplied.)

During the course of his direct examination he was asked questions to which he made answers as follows:

"Q. Mr. Parsons told you that? A. Yes.

"Q. And that was on August 18? A. That is the record I have here. I may not be exact on that date.

"Q. But it was within a few days of that, it was after July 20th for sure? A. Yes."

We pause here to point out that if the testimony of Haverkamp is to be believed plaintiffs were looking to Scraper for the payment of the account as late as August 18, 1961.

Certain questions asked and answers made by this witness on redirect examination read:

"Q. Mr. Haverkamp, irrespective of any legal effect that might be attached to the invoice, did you realize or know prior to receiving the statement of July 31, that this material was charged to the account of the defendant company? A. You mean I did know that he wasn't paying for that?

"Q. Did you know it was charged to your account before July 31? A. I thought it was routine that material was sent out that way.

"Q. Did you realize at that time that they were charging it to your account? A. No, I did not."

The case was submitted to the trial court on the evidence heretofore outlined. Its decision is reflected by the journal entry of judgment, pertinent portions of which read:

"And now, on this 20th day of May, 1963, the same being the May, 1963, motion day of the regular March, 1963, term of said court, the respective parties appearing as before, the court having carefully and fully considered the evidence, and the oral and written arguments of both parties, and being fully and informed in the premises, does find that the defendant's motion for judgment, made at the close of the plaintiffs' evidence, should be overruled, and the court does further find, upon the merits of the case, generally for the defendant and against the plaintiffs and that judgment should be against the plaintiffs for costs."

The judgment rendered was in accord with the journal entry and plaintiffs have appealed.

Appellants present the following question, among others, for review:

"Whether the unauthorized purchase of materials, by one professing to act as an agent for the owner of property being improved, upon the credit of the owner, is ratified by failure to repudiate when the owner, conforming with the purchase order, calls at the manufacturer's plant to pick the material up, accepts its delivery, and a uniform bill of lading to the materials made out in the owner's name, is invoiced by the manufacturer the date following delivery for the price of the materials; and receives the invoice together with a letter from the manufacturer informing it of what has been done."

The difficulty with appellants' entire position in this appeal is that their questions and arguments are based on the false premise that there was an unauthorized purchase of materials by one professing to be the agent of the owner of the property.

It is a well-recognized rule of law that before an act or contract may be the subject of ratification, there must be some element of principal and agent assumed by one of the parties to the transaction. Before an act or contract can be the subject of ratification, the one who performed the act or entered into the contract must have professed, represented or assumed to have been the agent of the one alleged to have ratified the act or contract. In *Beeler v. Lind,* 120 Kan. 662, 244 Pac. 1047, this court had the foregoing question under consideration and at page 665 of the opinion quoted with approval from 1 Mechem on Agency, 2d ed., § 386, as follows:

" 'Since the effect of ratification is to confirm the act as done, it is indispensable, in order to have an act of agency, that the act ratified must have been done by the assumed agent as agent and in behalf of a principal. If the act was done by him as principal and on his own account, or on account of some third person, it cannot thus be ratified.

" 'And not only must the assumed agent have *intended* to act as agent for the person ratifying, but, as declared by the house of lords after most elaborate consideration and according to the weight of authority in the United States,

he must have *professed* to act for a principal, though it is not necessary that he should have disclosed who that principal was if he be capable of indentification within the rule already laid down.'"

See, also, 3 Am. Jur., 2d. Agency, p. 555, § 171; 2 C. J. S., Agency, p. 1079, § 41(b).

Appellants do not appear to dispute the above settled rule applicable to ratification, but simply contend that, by their evidence and uncontradicted testimony, they have proven all of the necessary elements of the doctrine of ratification, including the fact that at the time of the sale of the bins and accessories it dealt with Scraper as the agent or representative of the appellee.

The answer to one simple question will dispose of this controversy, *i. e.*, at the time Scraper ordered the bins and accessories by telephone, did he order them on his own behalf or did he profess to order them as agent or representative for the appellee?

This issue presents only a question of fact and contrary to appellants' suggestion that its testimony was uncontradicted, we find the testimony highly controversial on this vital point.

Without reviewing the testimony previously presented, it will suffice to say that, although the sales manager for appellants did testify that in the telephone conversation Scraper ordered the material for appellee and stated he was authorized to do so, Scraper's testimony was directly to the contrary. According to appellants' own abstract Scraper testified that he never ordered any material on behalf of the appellee and denied the testimony of appellants' witnesses. Furthermore, appellee's manager testified that appellants' representative (Parsons) told him that Scraper had not paid for the bins but agreed to pay for them out of his commissions on sales for the company.

The trial court was not requested to make findings of fact. It found generally for the appellee and against the appellants on the merits of the case.

A general finding made by a trial court determines every controverted question of fact on which substantial evidence was introduced and raises a presumption that the trial court found all facts necessary to support the judgment. (See *Watkins v. Layton,* 182 Kan. 702, 709, 324 P. 2d 130; *In re Estate of Duncan,* 186 Kan. 427, 433, 350 P. 2d 1112; *Smith v. Smith,* 186 Kan. 728, 730, 731, 352 P. 2d 1036; *Dick v. Dick,* 188 Kan. 487, 489, 490, 363 P. 2d 457; *American Fence Co. v. Gestes,* 190 Kan. 393, 402, 375 P. 2d 775;

*Browning v. Lefevre,* 191 Kan. 397, 400, 381 P. 2d 524; *Wycoff v. Board of County Commissioners,* 191 Kan. 658, 672, 383 P. 2d 520.)

There must be presumed, as implicit in the trial court's general finding, a finding that Scraper had not ordered the bins and accessories on behalf of the appellee and had not represented himself to be its agent. There was ample testimony to support such a conclusion if the trial court saw fit to believe appellee's witnesses.

It is the duty of the trial court, not this court, to weigh conflicting evidence. This court in determining the sufficiency of evidence to support findings of fact is required to view all testimony in the light most favorable to the prevailing party. Findings of fact determined on conflicting evidence are conclusive. These principles have been stated in numerous cases and have recently been reiterated. (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Custom Built Homes Co. v. State Comm. of Rev. and Taxation,* 184 Kan. 31, 334 P. 2d 808; *Hammack v. Hammack,* 189 Kan. 509, 370 P. 2d 93; *Franklin v. Watkins, Inc.,* 190 Kan. 374, 375 P. 2d 618; *In re Estate of Eckel,* 191 Kan. 11, 379 P. 2d 346; *Wycoff v. Board of County Commissioners,* supra.)

This court is not concerned with the credibility of witnesses or the weight of their testimony. It is the function of the trier of facts, not the court of appellate review, to determine what testimony should be believed. (*Goetz v. Goetz,* 180 Kan. 569, 306 P. 2d 167; *White v. Rapid Transit Lines, Inc.,* 192 Kan. 802, 391 P. 2d 148.)

Applying the rules heretofore announced to the testimony disclosed by the record, we are constrained to hold that there was ample evidence to support the conclusion there was no representation or professed agency which would make applicable the doctrine of ratification.

What has been heretofore stated and held requires an affirmance of the trial court's judgment.

It is so ordered.