No. 43,906

In re Estate of Frank C. Schneider, Deceased. (LAWRENCE SCHNEIDER, as Administrator of the Estate of Herman J. Schneider, Deceased; MARGARET M. SCHNEIDER, JOHN SCHNEIDER, and LAWRENCE SCHNEIDER, *Appellants*, v. JOHN J. VANDENBERGHE, Executor, and all of the Legatees of the Will of Frank C. Schneider, Deceased, *Appellees.*)

(398 P. 2d 281)

Opinion filed January 23, 1965.

*Orval L. Fisher,* of Wichita, argued the cause, and *Russell Schultz,* of Wichita, was with him on the brief for the appellants.

*R. L. Hamilton,* of Beloit, argued the cause, and *Thomas H. Conroy* and *Harry W. Gantenbein,* both of Beloit, were with him on the brief for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is a will contest action. Appellants, opponents of the will, appeal from the orders of the trial court (1) adjudging the will in question to be a valid document, that it was the last will and testament of Frank C. Schneider, deceased, and was entitled to be admitted to probate and (2) from the order overruling appellants' motion for new trial.

At the outset we must consider motions by appellants requesting this court to order the production of certain original exhibits. We have considered the necessity for the furnishing of these exhibits in this court but are of the opinion the reasons advanced are not sufficient to so require. In view of the testimony of the witnesses, we think the copies furnished are sufficient for the determination of the appeal. Therefore, such motions are this day denied.

The extensive record discloses that Frank C. Schneider died testate at Lincoln, Kansas, on December 25, 1961, and the questioned document, which is the subject of this will contest action, in its pertinent portions, provided, first, that all of decedent's debts and funeral expenses including burial in the family lot at Tipton, Kansas, with a marker similar to others on the lot, and for mass at Tipton were to be paid. Certain real estate was bequeathed to Charles Arnoldy and James Arnoldy of Tipton. Cash bequests were made to each of the following: The Society for the Propagation of the Faith, The Roman Catholic Bishop of Reno, Nevada, The Roman Catholic Bishop of Salina, Kansas, and The Knights of Columbus, Council No. 1645. The cash balance in his bank account, all savings accounts, all time deposits, and all U. S. bonds, which were in different banks and in his safety boxes, were to be divided in three equal parts and given to St. Boniface Parish, Tipton, Kansas, Mount St. Scholastica College, Atchison, Kansas, and St. Benedict's College, Atchison, Kansas.

All real and personal property owned by decedent in the city of Lincoln, Kansas, was bequeathed to St. Patrick Parish, Lincoln, Kansas.

Finally, decedent nominated and appointed the Reverend John J. Vandenberghe as executor of his last will and testament, without bond, and as an alternate executor, the then pastor of St. Patrick Parish, Lincoln, Kansas, was appointed to serve.

The inventory and appraisement of the estate showed it to have a value of approximately $135,752.34.

Father John J. Vandenberghe, the executor, filed an answer on behalf of the proponents of the will to the written defenses filed by the opponents.

Paul Mick, called as a witness by appellees, testified he had been a resident of Tipton, Kansas, all his life and had been an employee of the Tipton State Bank since July, 1956. At the time of the execution of the will in January, 1961, and since October, 1959, he had been cashier of the bank. Decedent, who had been known by Mick since 1920, had lived in the Tipton neighborhood until he had moved to Lincoln, Kansas, about ten years before his death. Following much solicitation on decedent's part and over Mick's objection because he wanted decedent to go to an attorney, Mick, after decedent had told him what he wanted said in the will, had drawn the will in question. When decedent next came in the bank, Mick read the

will to decedent and decedent stated the will was the way he wanted it, he was ready to sign it, but he had not brought his witnesses with him. Father John J. Vandenberghe was with decedent and he heard the conversations and was present at the placing of the signatures on the will.

Mick called in two employees of the bank as witnesses; Cecilia Streit, a bookkeeper, and Caroline Ellenz, assistant cashier. Decedent said, "These girls look honest to me," and then told them he had his will and wished them to witness his signature thereto. A ball point pen was used because that was the only kind in the bank. Decedent then placed the executed will in his personal bank box. There were two keys to the box, one of which decedent kept in his possession, and the other the bank had in its possession. Both keys were needed to open the bank box.

Cecilia Streit, in brief, testified that she saw decedent read the will before he signed it, she saw him sign the will, and she signed as witness at decedent's request. She saw Caroline Ellenz, the other witness, witness the will in her presence and in decedent's presence. Mick and Father Vandenberghe were also present at the time. Decedent wore glasses but he did not have any difficulty in reading the will. Mick had called them into the room and decedent had asked them to witness his signature. Decedent took his time in writing and his signature was always slow. She was familiar with his signature and it was decedent's signature that she witnessed at his request and in the presence of one other attesting witness. She had seen decedent's writing quite often but had not seen him sign his name too often. He would have them make up his statement at the bank window. She saw him sign his name when making wheat loans, and had seen his writing on check stubs. She had also seen him sign his name, *Frank C. Schneider*, on important business matters. She further testified:

"I never read the will. I looked over it and knew it was the will. I never read the will. All I witnessed was his signature to his will."

She also testified that decedent used only one pen in signing the will and he did not start to sign his name, *Frank*, more than once. No additions, interlineations of descriptions, or corrections were made to the will after it was typed and after she was called in to witness decedent's signature. She had not seen decedent write

"Fr" on the will. She did not recall anything about the "Fr" but she thought the "Fr" may have béen on the will and then crossed out just before they witnessed the will.

Caroline Ellenz testified she had been employed by the Tipton State Bank since August, 1956, and was employed by the bank on January 19, 1961, but had not been employed there since November 3, 1962. She was the other witness who signed in decedent's presence. She saw him sign the will. Cecilia Streit, Paul Mick, and Father Vandenberghe were all present when decedent signed the will. She saw decedent read the will after she got there and she knew it was his will because he said it was his will. She had signed in the presence of Cecilia Streit, the decedent, Father Vandenberghe, and Paul Mick. She had not seen any writing on the will in handwriting until she saw decedent sign it. If some one had started to write on the line next to her signature, she would probably have seen it. The crossing out of the "Fr" was not done in her presence. She did not think the "Fr" was there because decedent had not signed the will before she and Cecilia Streit had come in. The will was not in the typewriter while she was in the room.

Father John Vandenberghe, a priest now of Osborne, Kansas, was in Lincoln, Kansas, at the time in question and until June 14, 1961, but at the time of decedent's death he was living in Osborne. He had taken decedent to Tipton, Kansas, in January, 1961, and decedent had explained to him why he wanted to see Paul Mick, the banker. The witness had no interest in the will.

James Arnoldy and Charles Arnoldy, beneficiaries under the will, were with the executor, Father Vandenberghe, when delivery of the will was made to the judge of the probate court for probate on December 26, 1961, the day following decedent's death.

Appellees rested their case and appellants introduced their evidence.

Charles Andrew Appel, Jr., a document examiner who analyzes handwriting, typewriting, and paper and ink, for evidence of authenticity or falsity, stated he received the will in question about June 30, 1962, and his examination of decedent's signature thereon showed there were images of additional lines around the signature line and that some of them were just depressions in the paper but others contained pigment. The "n" had just one or two of such images but there were three separate and distinct lines under the black lines as the signature was written. There was an additional line which was a depression in the paper and contained some dark

blue ink. Some of the other lines were in very light blue ink. He concluded the signature in heavy lines was written over guide lines and was a forged signature. There were erasure lines including broken fibers from the use of an erasure.

F. G. Reinert, a close friend of decedent, stated that he knew decedent had had a stroke in 1958 and that decedent had worn "great big heavy glasses" and had used a magnifying glass when reading.

Clara Giersch corroborated the testimony of Reinert in regard to the heavy glasses worn by decedent and his use of a magnifying glass.

D. B. Marshall, Jr., an attorney of Lincoln, Kansas, testified that Father Vandenberghe came to his office in February, 1961, and at the priest's request, Marshall thereafter drew a will for decedent but he had never consulted with decedent about such will.

On June 29, 1962, Lawrence J. Schneider, a nephew of decedent and an opponent of the will, took the will to a handwriting expert, William H. Quakenbush, Lawrence, Kansas, who had had thirty-eight years' experience in examining documents. He made enlarged pictures of the will and of known signatures of decedent and concluded the signature on the will was genuine. He had made a written report to the attorney for the opponents of the will. This was as the will appeared on June 23, 1962.

Later, and on April 21, and 22, 1963, one of the attorneys for the opponents of the will again submitted the will to Quakenbush for examination, and he again took enlarged pictures thereof. The signature on the instrument was not the same as it had been in June, 1962, and he pointed out the differences. He noted differences in the little "r" in the name *Frank* and found a tracing indentation which appeared to have been made with a blunt instrument.

It is to be noted that while Quakenbush had seen the documents at the request of the opponents of the will, he was called as a witness for the proponents of the will.

Harry Felker, a handwriting expert with the Kansas Bureau of Investigation since 1951, testified as to certain discrepancies revealed between color slides he made of decedent's signature on the will when he first examined the will on about March 6, 1963, and color slides he later made on May 3, 1963, and he corroborated the defects in the "r" appearing in the name *Frank* testified to by the witness Quakenbush.

Charles Andrew Appel, Jr., was called again in surrebuttal and testified in direct conflict to the testimony of Quakenbush.

At the close of the trial, the court made a short statement which in pertinent part reads:

"There was an allegation of undue influence or a suggestion of undue influence in the case; and the Court is of the opinion that the testimony does not sustain either of these differences to the Probate of this will. . . . The paramount question in the case [is] whether or not this will was executed by Frank C. Schneider. The court is confronted with testimony of the man at the bank, two witnesses to the will, all three of them stated without qualification that they saw Mr. Schneider execute the will. . . . But then we are confronted with testimony of experts, all of whom seem to enjoy a good reputation in their profession. And it will be up to the Court to take these exhibits, weigh them, and reach some decision as to whether or not this will was executed by Frank C. Schneider in the presence of these two witnesses; and that's the paramount question. . . ."

Oral argument was waived and briefs were filed after the trial court took the matter under advisement.

The trial was full and complete and this court is unable to find there was such undue restriction of appellants in the cross-examination of Cecilia Streit and Caroline Ellenz, the two attesting witnesses, as to constitute reversible error. Any limitation with respect to the testimony of the experts was merely a limitation of cumulative testimony and would not merit reversal of the trial court's judgment. So far as Paul Mick and Father Vandenberghe are concerned, the trial court chose to believe the testimony of the two attesting witnesses which was never disputed. Further, it may be noted that none of the four witnesses present at the time decedent signed his will received anything under the provisions of the will.

The trial court, after having taken the case under advisement on July 10, 1963, entered the following opinion:

"The court has considered all the testimony, the briefs of counsel, exhibits, deposition and statements. The court has also had the testimony of the experts read by the Reporter and reconsidered the same.

"All parties agree that there was a dark blue ink over a light blue ink in the signature of the testator. The court has examined the will under a strong light, and with a strong magnifying glass. This fact is obvious in both instances.

"The witness that first noticed this was Mr. Appel of Washington, D. C., on or about June 30, 1962. The witness Quakenbush testified changes were made after he surrendered the will to one of the heirs at law on June 23, 1962. He further testified that when he examined the will on or prior to June 23, 1962, 'the signature thereon was genuine'.

"The signatures of the two witnesses to the will appear in the same light blue ink as the underlying light blue ink in the signature of the testator.

"Each of the two witnesses to the will, proponent's Exhibit One, testified that they saw the testator sign the will.

"The Court finds that the will, proponent's Exhibit One, was executed by the testator Frank C. Schneider in the presence of the two witnesses, Cecilia Streit and Caroline Ellenz on or about January 19, 1961. That each of the two witnesses signed in his presence and in the presence of each other. That the testator read the will before signing. That he was competent and not acting under undue influence, and said act was his own free act.

"It is ordered that said will, proponent's Exhibit One, be admitted to probate."

Appellants filed a motion for new trial and during the hearing on the motion, the trial court heard further evidence and at the end thereof, in overruling the motion for new trial, made this statement:

"Well, the Court is a little perplexed by some of the testimony of the experts, but I am not preplexed by the testimony of the two girls that witnessed Mr. Schneider's signature to this will. Those girls were on the witness stand, they were convincing, they were frank, they said they saw him sign the will, signed it in their presence, and there has never been any impeachment of their signature by any witnesses in this case. And the order of the Court heretofore made will stand, and the motion for a new trial will be denied."

The trial court made the opinion of July 10, 1963, above quoted, a part of its journal entry of judgment, and therein reiterated that decedent had executed the will in the presence of Cecilia Streit and Caroline Ellenz on or about January 19, 1961, that these two witnesses had signed in decedent's presence and in the presence of each other, that decedent had read the will before signing it, that he was competent and was not acting under undue influence and this act was his own free act. The trial court again ordered the will admitted to probate. The motion for new trial was overruled on September 6, 1963.

We have carefully considered all the evidence in this record which we think fairly shows this court should not, and under its previous decisions, cannot disturb the determination made by the trial court because of certain cardinal rules of law adhered to in many of our earlier cases, and more recently in the three following cases handed down on July 14, 1964:

In *Preston v. Preston*, 193 Kan. 379, 394 P. 2d 43, it was held:

"It is not the function of this court to weigh conflicting evidence on appeal or to substitute its judgment for that of the trial court." (Syl. ¶ 1.)

In *Kramer v. Farmers Elevator Co.*, 193 Kan. 438, 393 P. 2d 998, the rules were stated thus:

"A general finding determines every controverted question of fact on which substantial evidence was introduced and raises a presumption that the trial court found all facts necessary to support the judgment.

"It is the duty of the trier of the facts, not the appellate court, to weigh conflicting evidence and the appellate court in determining the sufficiency of evidence to support findings of fact is required to view all testimony in the light most favorable to the prevailing party.

"The appellate court is not concerned with the credibility of witnesses or the weight of their testimony and the trier of the facts, not the court of appellate review, has the responsibility of determining what testimony should be believed."  (Syl. ¶¶ 2, 3, 4.)

In *Finnell v. Patrons Co-operative Bank,* 193 Kan. 354, 394 P. 2d 116, we further stated:

"Where the trial court's findings are attacked because of insufficiency of the evidence, the power of a reviewing court begins and ends with the determination of whether there is any substantial evidence to support the findings." (Syl. ¶ 1.)

Our conclusion is the trial court did not err in its judgment, which was based on substantial, competent evidence, or in its order overruling the motion for new trial.

The judgment is affirmed.